The STATE of Texas

v.

James VASILAS, Appellee.

No. PD–0351–05.

Court of Criminal Appeals of Texas.

March 22, 2006.

Katherine K. Decker, Asst. Criminal District Atty., McKinney, Matthew Paul, State's Atty., Austin, for Appellant.

Peter M. Barrett, Dallas, for Appellee.

## OPINION

MEYERS, J., delivered the opinion of the unanimous Court.

We granted the State's petition for discretionary review to decide whether a petition for expunction qualifies as a "governmental record" under section 37.01 of the Texas Penal Code. One definition of a governmental record is "anything belonging to, received by, or kept by government for information, including a court record." TEX. PENAL CODE ANN. § 37.01(2)(A) (Vernon Supp.2004–2005). The definition of a court record is "a decree, judgment, order, subpoena, warrant, minutes, or other document issued by a court." TEX. PENAL CODE ANN. § 37.01(1) (Vernon Supp.2004–2005). We will resolve whether pleadings *filed with* but not *issued by* a court fall within the definition of a governmental record pursuant to § 37.01(2)(A).

## Facts

Appellee, James Vasilas, is an attorney whose client was charged with the state jail felony of delivery of marijuana. Appellee's client was convicted of the lesser-included offense of possession of marijuana. Thereafter, Appellee signed and filed a petition of expunction of the records relating to his client's arrest on the delivery charge. The State then charged Appellee in a four-count indictment of tampering with a governmental record pursuant to TEX. PENAL CODE § 37.10, alleging that he made three false entries in the petition for expunction. Appellee filed a nonsuit of the expunction lawsuit.

Subsequently, Appellee filed a motion to quash the indictment on two grounds. First, he asserted that § 37.10 of the Texas Penal Code and Texas Rule of Civil Procedure 13 [1] were *in pari materia*, with Rule 13 controlling over § 37.10. Second, he claimed that pleadings in civil suits were not governmental records under the definition of § 37.01(2)(A). After hearing oral argument, the trial court granted the motion to quash without filing findings of fact or conclusions of law. The State timely filed its notice of appeal.

Because the State did not appeal the trial court's granting of the motion to quash the first three counts of the indictment, the sole issue before the court of appeals was whether the trial court erred in granting the motion to quash Count IV, which alleged that Appellee did "with intent to defraud and harm another, namely, the State of Texas, make, present, and use a governmental record, to wit: a Petition for Expunction of Records, with knowledge of its falsity." [2] The court of appeals affirmed the trial court, holding that "the petition for expunction filed by appellee

---

1. Rule 13 of the Texas Rules of Civil Procedure is entitled "Effect of Signing of Pleadings, Motions and Other Papers; Sanctions."

2. Section 37.10(a)(5) provides that a person commits the offense of tampering with a governmental record if he "makes, presents, or uses a governmental record with knowledge of its falsity." TEX. PENAL CODE ANN.

§ 37.10(a)(5) (Vernon Supp.2004–2005). Pursuant to § 37.10(c)(1), this offense is "a Class A misdemeanor unless the actor's intent is to defraud or harm another, in which event the offense is a state jail felony." TEX. PENAL CODE ANN. § 37.10(c)(1) (Vernon Supp.2004–2005).

was not a governmental record within the meaning of chapter 37 of the penal code." *State v. Vasilas*, 153 S.W.3d 725, 726 (Tex. App.-Dallas 2005, pet. granted). The court of appeals reasoned that by including a court record in the definition of a governmental record, the legislature meant to exclude every type of court document that was not a court record. Since the definition of a court record under the Texas Penal Code is a document *issued by* a court, the court of appeals concluded that a pleading, such as a petition for expunction, which is created by a party or attorney and merely *filed with* a court, cannot be a governmental record. Having resolved this issue against the State, the court of appeals did not address whether TEX. PENAL CODE § 37.10 and Rule 13 were *in pari materia*.

### Issue Presented

The State argues that "under the plain language of the statutory definition of 'governmental record,' which encompasses *anything* received by a court for information, a petition for expunction can be a governmental record even though it is *filed with*, not *issued by*, a court." The State asserts that the court of appeals' interpretation of the definition of a governmental record violates section 311.005(13) of the Texas Government Code, commonly referred to as the Code Construction Act, which defines "including" as a term of enlargement and not of limitation. Furthermore, the State submits that the court of appeals should not have looked beyond the plain language of the statute to its legislative history in discerning the meaning of a governmental record, and that it erred by misinterpreting the legislature's

intent in amending the definition of governmental record in 1997 to include a court record.[3] While Appellee concedes that the word "including" is not itself a term of limitation, he argues that a petition for expunction does not qualify as a governmental record because: 1) the words "for information" in § 37.01(2)(A) exclude documents that seek to destroy information; 2) the legislature did not explicitly include pleadings within the definition of a governmental record; and 3) the petition for expunction was not a governmental record when the false entries were made. Although Appellee also advances the argument that § 37.10 and Rule 13 of the Texas Rules of Civil Procedure are *in pari materia*, the court of appeals did not reach this issue, and it is not the issue for which we granted review. We will reverse the court of appeals' decision.

### Analysis

The resolution of this case depends on the meaning of the word "including" in the definition of "governmental record" in § 37.01(2)(A). The construction to be given a statute is a question of law. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex.1989). In our leading statutory interpretation case, *Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991), we explained that courts must begin with the plain language of a statute in order to discern its meaning. This is because the court's interpretation of statutes must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Id.* at 785 (citing *Camacho v. State*, 765 S.W.2d 431 (Tex.Crim.App. 1989)). In *Boykin*, we established that if

---

**3.** In 1997, the legislature amended § 37.01 by adding the phrase "including a court record" to the definition of "governmental record" in what had previously been § 37.01(1)(A). The legislature moved the definition of govern-

mental record from subsection (1) to subsection (2) and added a definition of a "court record" in § 37.01(1). *See* TEX. PENAL CODE ANN. § 37.01 (Vernon Supp.1998).

the literal text of the statute was clear and unambiguous, we would ordinarily give effect to that plain meaning. 818 S.W.2d at 785 (citing *Smith v. State*, 789 S.W.2d 590, 592 (Tex.Crim.App.1990)). However, we also held:

> If the plain language of a statute would lead to absurd results, or if the language is not plain but rather ambiguous, then and only then, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extra textual factors as executive or administrative interpretations of the statute or legislative history.

*Id.* at 785–86. The seminal rule of statutory construction is to presume that the legislature meant what it said. *Seals v. State*, 187 S.W.3d 417, 421, No. PD–0678–04, 2005 WL 3058041, 2005 Tex.Crim.App. LEXIS 1966 (Tex.Crim.App. Nov. 16, 2005). In adhering to this rule, we show our respect for the legislature and recognize that if it enacted into law something different from what it intended, it would amend the statute to conform to its intent. *Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim.App.2005) (citing *Lamie v. U.S. Trustee*, 540 U.S. 526, 542, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004) ("It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.")).

The legislature has provided the Code Construction Act to assist in statutory interpretation. It instructs that "words or phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." Tex. Gov't.Code Ann. § 311.011(b) (Vernon 2005). In § 311.005(13) of the Code Construction Act, the legislature expressly stated its intent regarding its use of the word "including" in statutory provisions, providing: " 'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded." Tex. Gov't.Code Ann. § 311.005(13) (Vernon 2005). This Court relied on § 311.005(13) in interpreting the statutory meaning of "including" in *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim.App.1992) (plurality opinion), *superseded by statute*, Tex.Code Crim. Proc. art. 37.07(3)(a) (Vernon Supp. 1994). Pursuant to § 311.005(13), we established that the list following "including" in Article 37.07(3)(a) of the Texas Code of Criminal Procedure [4] was not exclusive as to the evidence admissible at the sentencing phase of trial, as long as it was relevant to sentencing. *Grunsfeld*, 843 S.W.2d at 525 (explaining that the legislature's use of the term "including" in amending Article 37.07(3)(a) rendered the list following it nonexclusive); *see also Beasley v. State*, 902 S.W.2d at 456–57 (holding that evidence concerning the activities of a gang, to which the appellant belonged, was admissible under Article 37.07(3)(a) because matters relevant to sentencing were not limited to "the prior criminal record of the

---

**4.** At the time we decided *Grunsfeld,* Article 37.07(3)(a) provided that "regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, *including* the prior criminal record of the defendant, his general reputation and his character." Tex.Code Crim. Proc. art.

37.07(3)(a) (Vernon Supp.1991) (emphasis added). Subsequent to our decision in *Grunsfeld,* the legislature amended the language of § 37.07(3)(a) to clarify that evidence of unadjudicated extraneous offenses and prior bad acts were admissible at punishment. *See* Tex. Code Crim. Proc. art. 37.07(3)(a) (Vernon Supp.1994); *Beasley v. State,* 902 S.W.2d 452, 457 (Tex.Crim.App.1995) (plurality opinion) (McCormick, P.J., concurring).

defendant, his general reputation and his character").[5]

The lower courts have also interpreted the legislature's use of the word "including" as a means of illustration and not exclusion. For instance, in *Leach v. State*, the court of appeals applied § 311.005(13) to the defendant's community supervision condition, which tracked statutory language in the Texas Code of Criminal Procedure, and held that the word "including" did not "creat[e] a presumption against further inclusion of terms not expressly stated." 170 S.W.3d 669, 673 (Tex.App.-Fort Worth 2005, pet. ref'd) (holding that because "including" was a term of enlargement, the defendant had violated his community supervision by going within 1000 feet of a grassy area where children played, even though this location was not specified in the list of prohibited premises). Similarly, in *Wilburn v. State*, the court of appeals relied on § 311.005(13) to reject the appellant's argument that, by specifically including franchise taxes in the Franchise Tax Act, the legislature had intended to exclude directors' and officers' liability for all other taxes. 824 S.W.2d 755 (Tex.App.-Austin 1992, no pet.). In *H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd.*, this same court of appeals reasoned that the Railroad Commission of Texas's use of the word "including" in a notice provision did not create an exclusive list of interests entitled to notice. 36 S.W.3d 597 (Tex.App.-Austin 2000, pet. denied). In fact, citing § 311.005(13), the court of appeals stated that "the Commission's use of the word 'include' in the provision signified that the list is *not* exclusive." *Id.* at 603 (emphasis added).

Both this Court and the lower courts of appeals have construed "including" as a term of enlargement in accordance with the legislature's intention. By employing the word "including" to illustrate an example of a governmental record, the legislature did not by its plain language intend to exclude documents that were filed with the court from the definition of § 37.01(2)(A). In spite of the fact that the word "including" is unambiguous and the legislature has assigned it a particular meaning of enlargement, Appellee argues that the definition of a governmental record still excludes the petition for expunction at issue.

First, Appellee claims that the legislature would have included pleadings in the express language of § 37.01(2)(A), if it had intended them to be governmental records. We have already explained that the legislature's decision to name a court record as an example of a governmental record does not narrow what qualifies as a governmental record. Furthermore, we agree with the State that "it is difficult to see how the legislature would have to make any additions to the definition of governmental record for the current word 'anything' to include a pleading."[6] Second, Appellee contends that the phrase "for information" in the definition of governmental record operates to exclude the petition for expunction because it seeks to destroy other governmental records. Just because the filing of a petition for expunction may result in the destruction of certain records does not take away from the fact that the petition gives the government information about which records the petitioner wants to expunge. Third, Appellee contends that the petition for expunction

---

5. Although we decided *Beasley* in 1995, we relied on the earlier version of Article 37.07(3)(a), which we interpreted in *Grunsfeld* and which was in effect when the appellant had committed his offense.

6. The State first advanced this argument in its brief to the Fifth Court of Appeals.

is not a governmental record because it had not been received by the government when the false entries were made. *See Pokladnik v. State,* 876 S.W.2d 525 (Tex. App.-Dallas 1994, no pet.); *Constructors Unlimited v. State,* 717 S.W.2d 169 (Tex. App.-Houston [1st Dist.] 1986, pet. ref'd). Appellee's argument is misplaced because he relies on cases in which defendants were charged under § 37.10(a)(1), which requires knowingly making a false entry in, or false alteration of, a governmental record, and not under § 37.10(a)(5), which requires making, presenting, or using a governmental record with knowledge of its falsity. Although the petition for expunction was not a governmental record when Appellee prepared it, it became a governmental record once the court received it and he used it in seeking to obtain the expunction of records. *See Morales v. State,* 11 S.W.3d 460 (Tex.App.-El Paso 2000, pet. ref'd) (holding that even if a petition containing signatures for placement on the ballot was not a governmental record when it was falsified, it became a governmental record after it was accepted by the party chairperson and the candidate relied on it to maintain his position on the ballot). We conclude that the legislature's definition of a governmental record is clear and unambiguous and may include a court record, such as the petition for expunction at issue.

Having established that the clear and unambiguous language of § 37.01(2)(A) does not exclude pleadings, such as a petition for expunction, from the definition of a governmental record, it is necessary to determine whether bringing the petition for expunction within the language of the statute would lead to an "absurd result that the legislature could not possibly have intended." *Getts,* 155 S.W.3d at 155 (citing *Boykin,* 818 S.W.2d at 785–86). Relying on § 311.021(5) of the Code Construction Act for the proposition that in enacting a statute, there is a presumption that public interest is favored over any private interest, Appellee describes the allegedly falsified petition for expunction as a mistaken pleading, the prosecution of which "would have a chilling effect upon our system of jurisprudence." He characterizes the result of including pleadings in the definition of a governmental record as: "the State's orwellian [sic] persecution of lawyers by attempting to deprive counselors licensed by the Supreme Court of Texas of their ability to earn a living practicing before our courts." Clearly, Appellee misses the point of § 37.10, which does not effectively disbar attorneys, but makes them criminally liable if they tamper with a governmental record. While § 37.10(a)(5) makes it an offense to make, present, or use a governmental record with knowledge of its falsity, § 37.10(a)(3) makes it an offense to intentionally destroy, conceal, remove, or impair a governmental record, which is effectively what the falsified petition for expunction was attempting to do. There is nothing absurd about the legislature seeking to prohibit these acts with respect to a petition for expunction or other pleadings, and these prohibitions do not preclude effective lawyering, as Appellee suggests, by forbidding attorneys from entering alternative pleadings. Tampering with a governmental record pursuant to the definitions of §§ 37.10(a)(3) and 37.10(a)(5) is very different from advocating a client's interests by advancing different legal theories which have bases in the facts and the law.

Furthermore, we have not often considered the issue of what constitutes a governmental record, but our caselaw indicates that there is nothing unique about a petition for expunction such that the legislature would seek to treat it differently from all the other records that would fall within its scope. For instance, applica-

tions for government benefits, such as the one in *State v. Terrazas,* 4 S.W.3d 720 (Tex.Crim.App.1999), clearly qualify as *governmental records.* It is not at all absurd for the legislature to include pleadings within the meaning of a governmental record pursuant to § 37.10(a)(5). The legislature obviously meant to protect the people of the State by making it a crime to tamper with governmental records. By enacting § 37.10, the legislature intended to prevent a multitude of harms, including the destruction of governmental records, the perpetration of a fraud upon the court, and the miscarriage of justice that could result from the use of falsified records. There is nothing absurd about the legislature criminalizing such conduct.

### Conclusion

Because the legislature's definition of a governmental record is clear and unambiguous, and including pleadings in this definition does not lead to an absurd result, it is unnecessary to examine the legislature's intent in amending the definition of a governmental record in 1997. The court of appeals erred in undertaking such an analysis. We reverse the decision of the court of appeals and remand the case for consideration of the second ground for review.